Sutliff, J.
'The plaintiffs filed their petition in the court of common pleas of Cuyahoga county, June 17, 1858, to recover debt and damages claimed of the defendant in error, under a written contract of the defendant, an incorporated company, executed September 11, 1854, on the part of the company, by Yan R. Humphrey, as its president.
The petition stated that the road passed through said county, and that the principal office of business of said company was at Painesville, in Lake county.
A summons was directed to Lake county, and returned by the sheriff, served on the 19th of April, by leaving a true ■and certified copy, at the p rincipal business office of the defendant at Painesville.
On the 15th of May, 18J8, George W. Steele filed his motion in the case, stating that he was a member, and the secretary of the company, and resided at Painesville, in Lake county; and, for the following causes, asked that the petition be dismissed:
1. That the summons was served only by leaving with h.m a copy, at the office at Painesville, in the county of Lake.
2. That said Steele, on whom said service was made, is a resident of said Lake county, and had his domicil there.
*518 3. That said Painesville and Hudson Railroad Company is not an incorporated company.
4. That said railroad company, at the time of the com mencement of the action, and when the service of summons was made, had for its chief officer O. A. Avery, Esq., whose usual place of residence was at said Painesville, who, at the time of the service, was at his home, in said Lake county, and on whom service should have been, but ivas not made.
6. That said railroad company is not a corporation, but only an association of persons residing in said Painesville, and haying their usual place of business there; and only or ganized by a certain certificate, signed, sealed and acknowledged by said members, and deposited with the secretary oí state, to-wit:
“ To the Sonorable Secretary of the State of Ohio: "We, the subscribers, citizens of the township of Painesville, Lake county, and State of Ohio, do associate ourselves together, under the ‘ act to provide for the creation and regulation of incorporated companies, in the State of Ohio,’ passed the last session of the legislature, by the name of ‘ The Painesville and Hudson Railroad Company,’ for the purpose of constructing a railroad to commence at some point hereafter to be designated, in the township of Hudson, in the county of Summit, passing through the county of Portage or Cuyahoga, also through the counties of Geauga and Lake, and to terminate at some point to be designated, in the township of Painesville, in the county of Lake.”
“ And, furthermore, we certify that the capital stock necessary for the construction of said railroad will be one million of dollars.”
“All of which is most respectfully certified and submitted. Timothy Rockwell [seal], Benj. Bissell [seal], Storm Rosa [seal], Aaron Wilcox [seal], Seth Marshall [seal].”
The motion was signed and verified by the affidavit of said Steele.
And in support of the motion, on hearing thereof, the following affidavit of said Steele was read:
*519 “I, Geo. ~W. Steele, being duly' sworn, say that the defendants are an association of persons having their principal and only office and place of business in Painesville, Lake county, Ohio, and have no office or place of business in Cuyahoga county: That the said association of persons, if incor-
porated, are incorporated. under the act entitled “An act to provide for the creation and regulation of incorporated companies,” passed May 3,1852, by virtue of a certificate deposited and recorded in the office of the secretary of state of the State of Ohio (a true copy of which is embraced in, and is part of, my motion in this action), and in no other manner: That, under and in pursuance of the said certificate, and under no other authority, the said persons attempted to, and supposed they had, organized.
“ This affiant says he is, and for several years has been, secretary of said association, and that, at the time, long before, and since the service of summons was made, in this case, on this affiant, C. A. Avery, of said Painesville, and who has his residence and usual place of abode in Painesville, was president and chief officer of said association.
“ Sworn to, etc., Geo. W. Steele.”
The record does not disclose what further evidence, or whether any other evidence, was given in support of the motion.
The following is the journal entry of the dismissal in the common pleas : “ And it appearing to the court that, from the defects in said certificate of organization contained, the said defendant is not a duly organized corporation, or liable to be sued as such, it is ordered that this action be dismissed at the costs of said plaintiffs. To which order and decree the plaintiffs except.”
. To reverse the foregoing order the plaintiffs filed their petition in error, in the district court of Cuyahoga county, wherein the case was reserved for hearing in this court.
It is claimed that the court of common pleas erred—
1. In permitting Geo. W. Steele to appear in the case.
2. In dismissing the case on his motion.
*520 8. In finding that the defendant was not a duly organized corporation.
4. In finding that the defendant was not liable to be sued as a duly authorized corporation.
5. In dismissing the case.
The first question, by the record, is as to the right of the court to entertain the motion so made by Steele in the case.
It is only certain questions, properly triable by the court, that can be thus summarily tried upon motion. The question to be so tried must be one collateral, or preliminary, to the issue made in the case. The question sought to be raised by the motion in this ease was really one of jurisdiction. The substance of the motion is, that the members of the company being non-residents, and the return of the sheriff, showing no service of a summons within the county, the defendant was not constructively in court. The motion contains a statement of facts to show that the case fell under the general rule, that the action should be brought in the county where the defendants reside, and negativeing the fact that the defendants are an incorporated railroad company..
Was this substantive question, then, properly triable by the court upon motion ?
It is always the right of a party in a case to invoke the action of the court in this manner, for proper cause. And this right of making and being heard on his motion, has also very properly been extended by courts to those having an interest in the subject matter, though not parties. Thus, in actions of replevin, attachment, and in cases of distribution of money, it has been the practice to entertain and hear motions made by persons in interest, though strangers to the record. And this office of a motion, and its extent, as thus established by usage in courts, is clearly recognized by the provisions of the Code of Civil Procedure, thus expressed:
Sec.. 503. “ A motion is an application for an order, addressed to the court, or a judge in vacation, by any party to a suit or proceeding, or one interested therein.”
In applications of the kind, the court will judge of the relation of the party so making the motion to the subject mattei *521 of the action or proceeding; and the entertaining of the mo tion is an act of discretion on the part of the court.
I think that the person making the motion in this case is cer • tainly not shown by the motion to have been a mere intruder. Steele represents himself, in his motion, to be a member of aD unincorporated company, against which judgment is sought in the action. And if so, a judgment rendered against the company, by the name of the company, would be a judgment against all the members collectively, including him as an individual member of the association. Any member of the company, under these circumstances, I think, might very properly be admitted to make his motion, and. be heard upon it, in the case. I can not, therefore, perceive any error in the court having entertained and acted upon the motion of Steele in the case, although not named as a party upon the record.
There remains to be considered the action of the court upon the motion. Did the court err in allowing the motion and dismissing the action ?
We are not informed by the record, in what particulars the court found the certificate of organization defective. The argument of counsel is only to that of want of certainty as to the precise line of the location of the road; and our attention is particularly called to the case of The Atlantic and Ohio R. R. Co v. Sullivant and others, 5 Ohio St. Rep. 276. It must be admitted that the certificates in that ca-se and this, are somewhat similar. In that case, like this, the counties were named through which the road was to be located ; and, in both that certificate and this, certain contiguous counties were named m the alternative ; the road was to run through either one or the other of such counties. The termini in that certificate, were “ a point on the Ohio and Pensylvania State line, in the county of Trumbull, in said State of Ohio,”and “ a point on the Ohio river, in same State, in the county of Brown or Adams.” The termini, named in this certificate, are, “ some point hereafter to be designated, in the township of Hudson, in the county of Summit,” and “ some point to be designated, in the township of Painesville, in the county of Lake.” It is true, the points of termini in *522 the one case, are limited to the township, and in the other, upon the county line. But, when we take into consideration from.a geographical view, the difference of extent in the lines of the two roads, and the fact that the termini of the road, in this case, might be fixed at any point within the townships, while in the other, they were limited to the line of the counties, and it can hardly be claimed that the termini are more definite, in the case of this certificate, than in the one of the Atlantie and Ohio Rail Road Company. The certificates in both cases, were made under the following provisions of the “Act to provide for the creation and regulation of incorporated companies in the State of Ohio,” passed May 1st, 1852:
Sec. 1. “ That any number of natural persons, not less than five, may become a body corporate, with all the rights, privileges and powers conferred by, and subject to all the restrictions of this act.
Sec. 2. That any number of persons as aforesaid, associating to form a company for the purpose.of constructing a railroad, shall, under their hands and seals, make a certificate, which shall specify as follows: 1. The name assumed by such company, and by which it shall be known.' 2. The name of the place of the termini of said road, and the county or counties through which such road shall pass. 3. The amount of capital stock necessary to construct such road. Such certificate shall be acknowledged before a justice of the peace, and certified by the clerk of the court of common pleas, and shall be forwarded to the secretary of state, who shall record and carefully preserve the same in his office ; and a copy thereof, duly certified by the secretary of state, under the great seal of the State of Ohio, shall be evidence of the existence of such company.
Sec. 3. “ That when the foregoing provisions have been complied with, the persons named as corporators in said certificate, are hereby authorized to carry into effect the objects named in said certificate, in accordance with the provisions of this act; and they, and their associates, successors, and assigns, by the name and style provided in said certificate, shall thereafter be deemed a body corporate, with succession, with power to sue and be sued, plead, and be impleaded, defend and be defend *523 ed, contract, and be contracted with, acquire and convey at pleasure all such real and personal estate, as may he necessary and convenient to carry into effect the objects of the incorporation; to make and use a common seal, and the same to alter at pleasure, and do all needful acts to carry into effect the object for which it was created; and such company shall possess all the powers, and be subject to all rules and restrictions provided by this act.”
Acts of the legislature incorporating private, companies for the purpose of constructing turnpikes, canals and railroads, are found in our statutes, from the earliest history of legislation, in this State, down to the time of this act. Our new constitution however prohibited their passage, in the manner formerly enacted, by special acts; and provided that corporations should thereafter only be formed under general laws. Hence this general act upon that subject. This act is nevertheless subject to be interpreted, and construed according to the general rule of interpreting all statutes. This statute must he regarded in connection with our former system of legislation upon the subject, creating like corporations; and although this is a general statute, yet as it is a statute investing private associations with corporate powers and capacity, to construct a public thoroughfare, it is to he regarded as a statute in pari materia, with our former special statutes upon the same subject.
In order, then, to determine what the legislature really meant by the words, “ the name of the place of the termini,” as used in this act, let us recur to the degree of precision used by the legislature in former statutes upon the same subject as t.o the “ termini,” of roads and canals,- to be constructed by corporate companies.
The act incorporating the Knox, Richland and 'Huron turnpike company, passed, January, 1817, incorporated the company, in the language of the act, “ for the intent and for the purpose of making a turnpike road from Newark, through Mount Vernon, Mansfield & Truxville, to such point on Lake Erie, or Sandusky Bay, as the directors may think most to the interest of the State.”
The act to incorporate the Franklin Canal Company, passed *524 in 1836, provided that the canal should “ commence in or near the town of Eranklin Square, in Columbiana county; from thence to pass down the middle fork of the Little Beaver until it shall intersect the Sandy and Beaver Canal, at sotm suitable point northwest of New Lisbon in said county.”
The act of 1837 incorporating the Bellefontaine andPerrysburgh Railroad Company, authorizes the company to construct a railroad from the town of Bellefontaine, “ or from any point on the Mad river and Lake Erie Railroad, north of Bellefontaine, as the two companies may agree,” and thence to Perrysburgh.
The terminus of the Ohio and Indiana Railroad Company, by its act of incorporation passed in 1850, is thus expressed, “thence to upper Sandusky, in the County of Wyandotte, and thence on such route as the directors of the company, or a majority of them, may select, to the west line of the-State of Ohio; and thence to Fort Wayne in the State of Indiana.” the west line of this State being thus made, at any point, to constitute a terminus.
Indeed it will be found, I apprehend, that the rule has been in our past legislation, to have the point of the termini somewhat indefinite in the charter, and that it has only become determinate by an actual location. Nor can I perceive that the language of the statute under consideration intended to change the rule in that regard. It was found convenient, and often necessary, under our special legislation, both for the limitation of the powers to be granted in the charter, and for the purpose of avoiding conflict in prior and subsequent grants of corporate powers for like purposes, to have reasonable certainty expressed in the charter. For like reasons, and to secure the same objects, the certificate is required to express with like certainty, as was before expressed in the charter, as well the place of the termini and the counties through which a license to construct is asked, as the name of the company. And the certificate when thus made, acknowledged and certified, and recorded by the secretary of the state, by force of the statute, becomes to the company, and to third persons, as authoritative a description and license to locate the road in a reasonable compliance with such description, as would the *525 same language expressed in a special act or charter, under our former constitution.
To require a greater degree of certainty, in the certificate or charter, to give it validity, would necessarily defeat its object in many, if not the most of cases contemplated by the statute. For it is only by force of the license derived from the certificate, under the statute, that the company could send its engineers upon the lands of others, along the route, to make the necessary estimates to determine upon the feasibility of any route upon which to make a location, and determine the necessary points of the termini of the road, with entire precision. But the object being of public interest and the construction of such roads by private enterprise equally subservient of the convenience of the public, as if constructed by the State at public expense, such enterprises undertaken by private associations, have always been favored by the State, and the object of the legislature has been, as evinced by past legislation, to invest such companies with all that right of eminent domain, which the State herself might reasonably exercise in the location, construction, and maintenance of such public improvement.
The termini and line of this road would, without doubt, have been regarded sufficiently certain if expressed in the same language used in this certificate, in a special act or charter under our former constitution; and I am unable to perceive, either in reason or law, any ground for an exception to its validity for want of certainty, under this general act, which could not have been urged against the incorporation of the company if so claimed under a special act or charter.
The copy of the certificate is not attended with a copy of its acknowledgment, or the certificate of the clerk; but the fact of its having been admitted to record by the secretary of state, and no objection being taken to the certificate, for such cause, we presume it to have been properly executed.
But in this case the original petition alleged that the defendant was a corporation. The contract upon which the action was brought, a copy of which was appended to the petition, purported to be executed by the defendant, as a corpora *526 tion; and the motion and the affidavit of the mover, disclosed, at most, only a defect in the act of incorporation. But the affidavit admits that the company had attempted in all respects to comply with the requisitions of the statute, and in fact obtained, by a supposed compliance on their part, the acceptance and record of their certificate by the secretary of state, a copy of which was to them a valid charter, as they supposed. And the affiant further states that he had acted as their secretary for some three years, and that the president of the company was then residing at Painesville, where the company then kept its office.
It thus appears that the members of the company obtained their charter, supposed themselves a legally incorporated company, and had continued to hold themselves out, and to act as such, to and with the public, and are still so acting. Nor is there any denial, either in the motion or affidavit of Steele, that their president, Humphrey, was not authorized by himself and others of the association, to execute said contract on behalf of the association, as an incorporated company.
Under such circumstances, the members of the company, a,nd especially the officers of the company, are estopped to deny its existence as a corporation. However mistaken in fact, no person, whether artificial or natural, is permitted to so conduct and represent himself as to induce reasonable men, at his instance, to act upon the truth of such representations in their contracts and dealings with him, and to then deny the truth of such representations, to the prejudice of the party so having relied upon them.
In order for the company, or any member thereof, , to so repudiate its conduct, and disprove the truth of its own representation, it is necessary for it, not only to show an honest mistake, but that such mistaken representation had not induced the adversary party, in the exerci-se of reasonable prudence on his part, to give the credit, make the contract, and act under it in confidence of the truth of such conduct and representations.
But in this case, not only has the association obtained a copy of the certificate, its charter of incorporation, and *527 represented itself to the other party to be a corporation, by making the contract in that capacity, but it has continued to act in a corporate capacity down to the time of filing the motion ; and the member so filing the motion states that he is still the officer of the corporation. It thus appears that, instead of contradicting the misrepresentation, before the contract was made, the company had not, even after making the contract, either in conduct or representation, ever denied their corporate character.
Under such circumstances, to suffer the defendants to repudiate their first conduct, and deny the truth of their representations, by which the plaintiffs had been induced to contract with them, and upon which both parties had acted, would be in contravention of those principles of equity upon which the doctrine of estoppel rests, and its operative effect to prevent fraud depends.
We are, therefore, clearly of opinion that, at the time of the hearing of the motion, the company and its members who had so held themselves out to be a corporation, were estopped to deny that fact, for any defect whatsoever, if the same had in fact existed in their charter.
The judgment of the court of common pleas must, therefore, be reversed, and the cause remanded.

Judgment accordingly.

Scott, C.J., and Peck, Gholson and Brinkerhoee, JJ., concurred.